

# THE ATTORNEY GENERAL

# OF TEXAS

GROVER SELLERS
XXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable John Q. McAdams, Commissioner
Department of Banking
Austin, Texas

Dear Sir:

Opinion No. 0-5797
Re:  Franchise tax liability of State
banks placed in voluntary liqui-
dation pursuant to applicable
provisions of law.

In your letter of January 5, 1944 you request the opinion
of this department upon the question therein contained, which
for convenience we quote as follows:

"The question has arisen regarding franchise
tax liability of state banks placed in voluntary
liquidation pursuant to applicable provisions of
law.  Article 7084a reads as follows:

"'Hereafter no franchise tax shall be as-
sessed against a state bank after it has closed
its doors and has gone into the hands of the
Banking Commissioner for liquidation according
to law, nor shall any such corporation be liable
for any franchise tax while in the hands of the
Commissioner for liquidation.  The failure of
the Commissioner to pay franchise taxes for any
bank in his hands for liquidation shall not op-
erate to revoke or forfeit the charter of such
corporation.

"'Provided, that after such liquidation should
there be any funds left that would go to the stock-
holders, then all past due franchise taxes (em-
phasis ours) shall be paid before distributing such
funds, if any, to outstanding stockholders.

"'Provided further, that the Banking Commission-
er of Texas shall not be required to file with the
Secretary of State any reports for the purpose of
assessing franchise taxes, as provided in Article
7088, Revised Civil Statutes, 1925'.

"We understand that the last paragraph of the

Article quoted above is meaningless in that Article 7088 has been repealed. However, the language of this particular paragraph along with the provisions of the Article may be pertinent in respect to a determination of the meaning of the term 'past due franchise taxes'.

"A bank was placed in voluntary liquidation pursuant to applicable provisions of law on March 20, 1939, on which date it owed franchise taxes in the sum of $15.00. It has now completed its liquidation procedure, that is to say, has paid all of its depositors and creditors, except the State, and has on hand an amount of cash subject to distribution to the stockholders of record. It desires to effect the distribution and bring about a cancellation of its corporate status.

"Question:

"Should this bank be required to pay the Secretary of State under the franchise tax requirement the $15.00 which was past due at the time the bank was placed in liquidation, plus additional franchise taxes for subsequent years from the date said bank was placed in voluntary liquidation pursuant to provisions of law? Or is the amount of liability limited to $15.00 by reason of the fact that the Secretary of State cannot assess a state bank incident to franchise taxes after it has closed its doors and by reason of the further expression which says, 'nor shall any such corporation be liable for any franchise tax while in the hands of the Commissioner for liquidation.'

"We are presuming that the provisions of law set out in Article 7084a apply with equal force to a bank placed in voluntary liquidation according to law, since we have an opinion to such effect. An answer to this inquiry is deemed important for the reason that this Department should not certify to the Secretary of State that a bank has discharged all of its liabilities and thus is eligible for a cancellation of its corporate status in the absence of evidence as to the payment of franchises taxes up to date of the dissolution request if you should hold that the bank is liable for franchise taxes after it has closed its doors."

We take it that your question is submitted upon the assumption that a State bank in process of voluntary liquidation under Articles 539 and 540 of Vernon's Revised Civil Statutes in effect before repealed by the Banking Code passed by the 48th Legislature, and now superseded by Article 342-802 V.R.C.S. of said Banking Code has, in the language of Article 7084A quoted in your letter, "gone into the hands of the Banking Commission for liquidation according to the law." If this assumption be correct -- and we hold it is not -- we would in our view have a less difficult question for solution. We would in our opinion, under this view, have to adopt the same rule as to a solvent bank in the process of voluntary liquidation as would apply to one insolvent in involuntary liquidation. Under the applicable provisions of the statute under the prior law or under the present Banking Code, as concerns a liquidation by the Commission there could be no doubt but that such a bank "has gone into the hands of the Banking Commissioner for liquidation, according to law", within the purview of Article 7084A, supra. Under this assumption we would be constrained to hold that regardless of whether a bank is liquidated by voluntary process or by being taken over by the Banking Commissioner for liquidation no franchise tax would accrue and become due during the process of liquidation under the express terms of said Article 7084A, except if "there be any funds left that would go to the stockholders", then all past due franchise taxes shall be paid before distributing such funds, if any, to outstanding stockholders, and that the term "past due franchise taxes" referred to in the proviso to the statute has reference to franchise taxes due at the time liquidation was begun.

Since we have reached the conclusion that Article 7084A is applicable only to banks taken over and liquidated by the Banking Commissioner, as distinguished from a voluntary liquidation by the stockholders, we must look elsewhere for an exemption from franchise tax, if such exists, as is imposed upon every domestic and foreign corporation by virtue of Article 7084 which provides:

"(A) Except as herein provided, every domestic and foreign corporation heretofore or hereafter chartered or authorized to do business in Texas, shall, on or before May 1st of each year, pay in advance to the Secretary of State a franchise tax for the year following, based upon that proportion of the outstanding capital stock, surplus and undivided profits, plus the amount of outstanding bonds, notes and debentures, other than those maturing in less than a year from date of issue, as the gross receipts from its business done in Texas bears to the total gross receipts of the corporation

from its entire business, which tax shall be com-
puted at the following rates. . . ."

Admittedly State banks are domestic corporations sub-
ject to franchise tax, and we know of no other exemption from
such tax accorded to them except that found in Article 7084A.

The distinction we have here made is of too much impor-
tance to pass without supporting comment, although we frankly
confess that we have not found a case passing upon or deciding
the question either way.

A brief survey of the applicable statutory provisions as
to voluntary liquidation of State banks is found in Vol. 6 Tex.
Jur. p. 315 in the following language:

"While it is declared to be unlawful for any
banking corporation to make a voluntary general as-
signment, a solvent banking corporation may volun-
tarily close the bank and liquidate its business up-
on the vote of shareholders having two-thirds of the
shares. The procedure is that, after the board of
directors have resolved that closing of the business
is necessary or expedient, notice of a meeting of
shareholders called to give effect to the proposi-
tion is advertised and mailed to stockholders at
least sixty days prior to the intended meeting. If
adopted by stockholders, a certified copy of the
resolution of adoption is to be filed with the Com-
missioner. The notice required by statute to be
given pursuant to the dissolution of a banking cor-
poration is for the benefit of stockholders, depos-
itors and creditors. The statute requires a copy
of the resolution to be filed with the Secretary of
State. . . .

"Acting under their statutory powers, the re-
quired majority of stockholders may put the bank in
liquidation, and so long as the liquidators act in
good faith in the disposition of the assets and fee
that full value is obtained therefor, the minority
stockholders may not complain. . . ."

This, we think, is a fair statement of the statutory authority
for a voluntary liquidation, and we are unable to gather from
these statutes, or Article 342-802 of the present Banking Code,
Vernon's Revised Civil Statutes 48th Legislature, that their
effect is to place such banks in the "hands of the Banking Com-
missioner for liquidation according to law," but to our mind
the reasonable import of these statutes is to place such banks

in the hands of their stockholders for liquidation, subject, of course, to the large discretion vested in the Commissioner under the Constitution and statutes where a question of insolvency or irregularity arises.

The circumstances under which the Commissioner is authorized to close a banking corporation is stated in Tex. Jur. Vol. 6, p. 321 in the following language:

"The circumstances under which the Commissioner is directed to close a banking corporation are: 1. Insolvency; 2. Jeopardy to the safety of depositors or by its continuance in business; 3. The making or undertaking to make a voluntary assignment of its assets; 4. Disapproval of the Banking Board of the Bank and a determination that it is not entitled to conduct a banking business (unless in this instance the bank goes into voluntary liquidation).

"A large discretion is given to the Commissioner by this statute; and his determination that the bank is insolvent is final and not subject to judicial review."

There obviously exists a marked distinction between the power of the banking Commissioner with respect to solvent banks voluntarily liquidating through an orderly process of voluntary action upon the part of the stockholders and insolvent banks taken over by the Commissioner and liquidated by him under his statutory authority and this distinction is apparent from an examination of the various provisions of the statute noted briefly as follows:

Article 539 and 540, R.C.S., now repealed by the Banking Code and Article 342-802 of the present Banking Code provide (1) that the liquidation of a solvent bank is initiated only by the stockholders; (2) that the doors of the bank are closed by the voluntary act of the stockholders; (3) that the liquidating process is carried on under the direction of the stockholders; and (4) that the stockholders wind up the liquidation and submit a final report to the Commissioner, which, if regular, he would have no discretion except to approve. In the case of insolvency or involuntary liquidation the liquidation is initiated by the Commissioner, he closes the doors, takes over the assets of the bank, and proceeds with the liquidation to the final winding up of the affairs of the bank. In such latter case the bank has 'closed its doors' and in the language of the statute 'has gone

into the hands of the Banking Commissioner for liqui-
dation, according to law,' . . . .

In this instance, and this alone, does the exemption
from franshise tax imposed upon all domestic corporations exist
in favor of State banks.  They do not come with any of the ex-
ceptions provided in Article 7094, R.C.S., and these exceptions
are not necessary to be enumerated here.

Having reached the conclusion that a solvent bank vol-
untarily liquidating does not come within the provisions of
Article 7084A, R.C.S. or any other exemption provided by sta-
tute we are constrained to the view that such banks' liability
for franshise tax must be determined by general statutes ap-
plicable to all domestic corporations as is provided in Article
7097, R.C.S. applicable to corporations in the process of li-
quidation.  This statute reads as follows:

> "If a corporation is actually in process of li-
> quidation, such corporation shall only be required to
> pay a franchise tax calculated upon the difference be-
> tween the amount of stock actually issued and the a-
> mount of liquidating dividends actually paid upon such
> stock; provided, that the president and secretary of
> such corporation shall make affidavit as to the total
> amount of capital stock issued and as to the amount
> of liquidating dividends actually paid and that such
> corporation is in an actual bona fide state of liqui-
> dation."

Our Supreme Court speaking through Justice Sharp said in
the case of Ross Amigos Oil Company vs. State 138 S.W. (2d)
798 in commenting upon the broad operations of our statute im-
posing a franchise tax upon all corporations used the following
language:

> ". . . . . . . The clear purpose of this law is to levy
> a franchise tax on each and every corporation that is
> chartered in the State, -- with certain exemptions,
> which are not involved here. . . . ."

In this case Justice Sharp quoted from the Court's opinion in
Federal Crude Oil Company vs. Yount Lee Oil Company 52 S.W.
(2d) 56 as follows in speaking of the effect of Article 7091
and 7092 which deal with penalties and forfeitures for failure
to report and pay the franchise tax imposed by law:

> "This statute is purely a revenue measure.  Un-
> der it large sums are collected for the support of the
> state government.  Statutes of this nature are always

liberally construed so as to effectuate the chief object and purpose of their enactment. In making provision for the collection of public revenue, ordinarily time is not of the essence of the thing sought to be accomplished. The primary purpose of such a statute is to secure the payment of the taxes therein levied.
. . . . . "

From the foregoing it follows that we are of the opinion that under the state of facts submitted by you a solvent State bank in process of liquidation through the voluntary action of its stockholders is subject to franchise taxes as any other corporation in the process of liquidation upon the basis of Article 7089, supra, and you are accordingly so advised.

Very truly yours

ATTORNEY GENERAL OF TEXAS


By s/L. P. Lollar
L. P. Lollar
Assistant

LPL:gm:wc


APPROVED JAN 28, 1944
s/Grover Sellers
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/A.W. Chairman